OLSON,
*Respondent,*
*v.*
GAF CORPORATION,
*Appellant.*

(No. A7809-15727, CA 17896)

630 P2d 921

Frank V. Langfitt III, Portland, argued the cause for appellant. With him on the briefs was Lindsay, Hart, Neil & Weigler, Portland.

E. Daniel Seymour, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Plaintiff filed an action at law seeking to recover money damages from defendant arising out of a prior employee-employer relationship. Plaintiff asserted that he was entitled to commissions for 1976, 1977 and part of 1978, vacation pay for 1977 and 1978, and compensation under a Special Severance and Stay Bonus Program (program).

Trial was held before a jury, and based upon the verdict, judgment was entered for plaintiff awarding him a commission for 1976, vacation pay for 1978 and compensation under the program, together with interest and attorney fees.

On appeal defendant contends the trial court erred: (1) in failing to treat the program as an unambiguous contract, the construction and legal effect of which was a question of law to be decided by the trial court, and (2) in submitting the meaning of the contract to the jury.[1] The issue is whether the trial court erred in finding the program was an ambiguous contract.

The facts are not in dispute. In July, 1977, GAF announced that it intended to sell its dyestuff division. In August, 1977, GAF offered certain employees, including plaintiff (who was employed as a salesman for the dyestuff division), a program, the relevant provisions of which were:

"1. If employee who is offered this Special Program, remains with GAF until it elects to release employee or plant is closed (liquidated) employee will receive regular severance pay plus 2 months additional pay as a Stay Bonus, both of which will be paid in lump sum payment or spread out over the severance period if he or she so elects.

"2. If employee remains with GAF until it sells the plant and buyer offers a job the employee accepts - no Stay Bonus or regular severance is to be paid . . . unless the new job pays less than the employee was earning at his final GAF position. In this case, the Company will pay the employee the differential during the duration of the severance period.

---

[1] Defendant does not appeal that portion of the judgment awarding plaintiff commission and vacation pay.

"3. If the buyer does not offer the employee a job, the employee will receive the same treatment as Case No. 1 above."

During the following months, it became known that GAF was negotiating a sale to Buffalo Color Corporation (Buffalo). It is not clear when these negotiations began, but they were in progress by October, 1977, and in December, 1977, a tentative sale to Buffalo was announced. Thereafter, plaintiff signed an employment contract with Buffalo, which was dependant on the sale being consummated. On April 7, 1978, it was announced that negotiations with Buffalo were terminated and that the dyestuff division had been sold to BASF Corporation (BASF). Upon learning of the failure of the sale to Buffalo, plaintiff began arranging job interviews. He was interviewed by BASF, which offered him a job at a higher salary, which he accepted. He was told to start work on April 17, 1978, calling on the same customers he had while employed by GAF. Plaintiff received compensation for the entire month of April, despite a gap of several days between his termination by GAF and his commencement with BASF.

At trial, plaintiff contended that: (1) he had been terminated by GAF; (2) he had found employment with BASF on his own initiative; (3) his job with BASF was not part of the sale of the dyestuff division; (4) the word "buyer" in the program was intended to mean only Buffalo; and (5) he had remained on the job until the sale, was not employed by Buffalo, and had found new employment on his own, and therefore he was entitled to the benefits of the program. Defendant argues that the language of the program is unambiguous and that the word "buyer" means any buyer of its dyestuff division, and because plaintiff was offered and accepted employment with BASF, the dyestuff division buyer, he was not entitled to the program benefits. Defendant moved for a directed verdict on this issue; however, the trial court held the language of the program was ambiguous and submitted the issue to the jury, which found for plaintiff.

As a general rule, the construction of a contract is a matter of law. The exception to this rule is that if the language of the contract is ambiguous, the question

becomes one of fact. Whether a contract is ambiguous is a question of law and, therefore, the decision of the trial court on the issue of ambiguity is reviewable on appeal. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 576 P2d 1244 (1978); *Evenson Masonry, Inc. v. Eldred,* 273 Or 770, 543 P2d 663 (1975).

■ Plaintiff's argument that as a matter of law the word "buyer" was intended to mean only Buffalo is not persuasive. The program said "buyer" at a time when there was no specific buyer and therefore meant the ultimate buyer of GAF's dyestuff division, in the absence of any contract language that "buyer" meant any specific prospective buyer. The fact that plaintiff found his own position with the ultimate buyer, rather than being placed with BASF by GAF, is irrelevant, for the program does not require that GAF find its employees positions with the buyer in order for the bonus provisions not to apply. We therefore hold that the contract was unambiguous. The trial court erred in refusing to grant defendant's motion for a directed verdict. Plaintiff was not entitled to recover any of the benefits offered by the program.

The portion of the judgment awarding plaintiff damages under the program is reversed.

Reversed in part and remanded for entry of a new judgment.